GORDON BALL,                            )
                                          )

           Plaintiff,               )
                                            )

v.                                 )        No.: 3:11-CV-621
                                          )            (VARLAN/SHIRLEY)

PAIGE VON HOFFMAN,            )
                                          )

           Defendant.            )

## MEMORANDUM OPINION & ORDER

This civil action is before the Court on two motions: 1) defendant Paige Von Hoffman's Motion for Summary Judgment [Doc. 24]; and 2) plaintiff Gordon Ball's Motion for Partial Summary Judgment [Doc. 36]. The parties have filed responsive briefs as well as additional motions that the Court will address herein.[1] Upon review of the motions, in light of the arguments of the parties and the relevant law, both defendant's motion [Doc. 24] and plaintiff's motion [Doc. 36] will be denied.

## I.    Background

This dispute stems from the 2010 dissolution of the marriage between plaintiff and defendant, ending a relationship that began in 2007 [Doc. 1-1 ¶ 17]. In 2008, during the couple's engagement and a few weeks before their wedding, defendant informed plaintiff that a former boyfriend had spent the weekend with defendant and her children from a

---

[1] In addition to the motions for summary judgment, the following motions filed by defendant are also before the Court: 1) the Motion for Leave to Amend Answer [Doc. 39]; 2) the Motion to Dismiss Plaintiff's Motion for Partial Summary Judgment [Doc. 41]; 3) the Request for Oral Argument [Doc. 40]; and 4) the Motion for Additional Time [Doc. 49].

previous marriage [*Id.* ¶ 19]. Defendant denied that anything had happened between herself and her former boyfriend, and although plaintiff considered cancelling the wedding, defendant convinced plaintiff to attend counseling in order to work out their differences prior to their marriage [*Id.* ¶ 20]. While attending counseling with defendant's minister, defendant again insisted that nothing had happened between herself and her former boyfriend in order to assure plaintiff that there had been no infidelity [*Id.* ¶ 21]. Satisfied that his fiancé had not been unfaithful, plaintiff agreed to go forward with the marriage after defendant's assurances, and the wedding occurred as planned on August 30, 2008 [*Id.* ¶ 23].

On or about October 28, 2009, the parties separated [*Id.* ¶ 24]. Although the parties attempted to save the marriage by attending further counseling, the parties eventually accepted that their differences were irreconcilable, and began discussing the idea of an uncontested divorce [Doc. 1-1 ¶ 25]. During this time period, the parties also began to discuss the terms of a Marital Dissolution Agreement ("MDA"), which would be required for an uncontested divorce. During this time, defendant informed plaintiff that she would agree to a divorce only if plaintiff did the following: 1) assume defendant's $350,914.67 mortgage debt; 2) pay defendant $240,000; and 3) pay private school tuition for defendant's two children until they completed high school [*Id.* ¶ 27]. These and other terms were set forth in the MDA [Doc. 24-1] and later incorporated by reference into the divorce judgment entered by Knox County Chancery Court on January 22, 2010 [Doc. 24-2].

In July 2010, defendant informed plaintiff that she had in fact had a sexual relationship prior to the couple's wedding, and had engaged in adulterous relationships with other individuals during their marriage [Doc. 1-1 ¶ 33]. Up until that time, plaintiff had followed through with his financial obligations under the MDA, including paying defendant's mortgage, paying defendant $240,000, and making payments toward defendant's children's tuition [Doc. 1 ¶¶ 30-32]. After learning these facts, however, plaintiff stopped making payments on the tuition, which prompted defendant to file a petition in chancery court on April 19, 2010, seeking sanctions against plaintiff for non-payment [Doc. 25 at 2]. In response, plaintiff filed an answer and counterclaim to the petition, arguing fraud as both an affirmative defense and as grounds for nullifying the divorce judgment and MDA [Doc. 24-3 ¶ 19]. Defendant filed a motion to dismiss, and on September 28, 2011, the chancellor dismissed the counter-petition without prejudice, on the grounds that plaintiff's counter-petition was a motion to set aside a judgment under Rule 60.02 Tennessee Rules of Civil Procedure and was untimely [Doc. 28-1].

Plaintiff filed the instant action in Knox County Circuit Court on November 29, 2011, which was timely removed to this Court by defendant, an Ohio resident.

## II.     Standard of Review[2]

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and

---

[2] Although defendant presents her motion as a motion pursuant to Rule 56 and Rule 12(c) of the Federal Rules of Procedure, because defendant and plaintiff attached exhibits to their respective briefs, the Court will consider the motion as one for summary judgment under Rule 56 rather than a motion for judgment on the pleadings under Rule 12. *See* Fed. R. Civ. P. 12(d).

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the non-moving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Catrett*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed

4

is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. Analysis

### A. Defendant's Motion for Summary Judgment

#### 1. Rule 60.02

Defendant first claims that plaintiff's action is prohibited under Rule 60.02 of the Tennessee Rules of Civil Procedure, as plaintiff is merely seeking a modification to the divorce judgment obtained in chancery court, which is untimely under the Rule. Defendant cites to *Black v. Black*, 166 S.W.3d 699 (Tenn. 2005), in support of her argument that plaintiff's action is time-barred. Plaintiff responds that his action is not a motion for relief under Rule 60.02, but is a separate cause of action for fraud, which plaintiff argues is in fact supported by the ruling in *Black*.

> In pertinent part, Rule 60.02 states as follows:
>
> [o]n motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party
>
> . . . .
>
> The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

. . . .

> This rule does not limit the power of a court to entertain an independent
> action to relieve a party from a judgment, order or proceeding, or to set
> aside a judgment for fraud upon the court.

Tenn. R. Civ. P. 60.02. Tennessee courts have noted that Rule 60.02's purpose is to "'alleviate the effect of an oppressive or onerous final judgment.'" *Black*, 168 S.W.3d at 703 (quoting *Killion v. Dep't of Human Servs.*, 845 S.W.2d 212, 213 (Tenn. 1992)). While the rule contains a savings provision for "an independent action" that is not subject to the general time limitation set forth in the rule, it may be granted "only under unusual and exceptional circumstances" and "where no other remedy is available or adequate." *Id.* (quoting *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 229-30 (Tenn. Ct. App. 2000)). The independent action to set aside a judgment under the savings provision of the rule must involve "extrinsic fraud," or fraud that "involves deception as to matters not at issue in the case which prevented the defrauded party from receiving a fair hearing." *Id.* at 704 (citation omitted).

*Black* concerned a plaintiff suing her former husband in chancery court for fraud, deceit, and coercion approximately two years after the entry of a divorce decree in circuit court, which incorporated the provisions of an agreed-upon MDA between the parties. *Id.* at 701. The plaintiff argued that the terms of the MDA were obtained by fraud and coercion. The Tennessee Court of Appeals concluded that the plaintiff's action, although labeled as a common law action for fraud, was actually an independent action to set aside the divorce decree under Rule 60.02. The court affirmed the chancery court's dismissal

6

of the plaintiff's case, finding that her complaint failed to establish a claim for "extrinsic fraud," which was necessary to avoid the general one-year limitation of Rule 60.02.

On review, the Tennessee Supreme Court first affirmed the appeals court's finding that the complaint was insufficient for relief under Rule 60.02 yet proceeded to examine the complaint under the requirements for a common law claim of fraud. Specifically, the court noted that "[n]othing in Rule 60.02, or any other authority cited by the parties, prevents the filing of a common law action for fraud for damages simply because the ground of 'fraud upon the court' may serve as a basis for setting aside the judgment." *Id.* at 704-05. The court ultimately found that the plaintiff's complaint was deficient under Tennessee's equivalent to Rule 9(b) of the Federal Rules of Civil Procedure, which requires that fraud claims be "stated with particularity." Tenn. R. Civ. P. 9.02.

Similarly to the distinction made by the *Black* court, in *Moore v. Moore*, No. 01-A-01-9708-CV-00444, 1998 WL 848091 (Tenn. Ct. App. Dec. 8, 1998), the Tennessee Court of Appeals addressed what it termed as "a fundamental misunderstanding" when a circuit court had held that a later filed chancery court case involving fraud was bound by the circuit court's previously entered divorce judgment, *id.* at \*2. The court noted that the chancery court action was an action for damages, rather than an action for relief from the circuit court divorce judgment. "This is a separate, independent, and distinct action . . . . Notwithstanding that the property settlement agreement may have been incorporated into the divorce decree, one option available to plaintiff to seek redress for the alleged

7

fraud of defendants is to sue for damages at law under the theory of fraud and deceit." *Id.* (quotation omitted).

In this case, defendant contends that plaintiff's action is an "independent action" to set aside the 2010 divorce judgment, and since plaintiff does not allege extrinsic fraud, that action is barred under Rule 60.02. The Court disagrees. Plaintiff's action does not seek an alteration, modification, or setting aside of the divorce judgment under Rule 60.02; rather, this matter involves an action for common law fraud in which plaintiff seeks a "judgment for damages against the Defendant in an amount to be determined at trial, plus pre-judgment interest and costs" [Doc. 1-1]. While it is true that plaintiff's damages might include the amount he alleges was fraudulently paid to defendant, plaintiff's action is not prohibited by the ruling in *Black* but is permitted by the court's opinion. Moreover, the present matter before the Court represents the type of "separate, independent, and distinct action" as contemplated by the *Moore* court, as a disposition of this action will not affect the prior divorce judgment. Plaintiff's action is not dependent upon Rule 60.02, such that defendant's invocation of the rule is insufficient grounds for granting summary judgment in her favor.

## 2. Sufficiency of Plaintiff's Fraud Claim

Defendant argues that plaintiff did not sufficiently plead the elements of fraudulent inducement. Given the procedural posture of this case, however, the Court focuses its analysis on whether there is a genuine issue of material fact as to whether plaintiff was fraudulently induced into entering the MDA. Under Tennessee law, a party

8

making a fraudulent inducement claim has the burden of proving that the defendant: (1) made a false statement concerning a fact material to the transaction; (2) with knowledge of the statement's falsity or utter disregard for its truth; (3) with the intent of inducing reliance on the statement; (4) the statement was reasonably relied upon; and (5) an injury resulted from this reliance. *Baugh v. Novak*, 340 S.W.3d 372, 388 (Tenn. 2011). The Tennessee Court of Appeals has defined a fact as "material" if

> (a) a reasonable [person] would attach importance to its existence or nonexistence in determining his [or her] choice of action in the transaction in question; or

> (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his [or her] choice of action, although a reasonable [person] would not so regard it.

*Odom v. Oliver*, 310 S.W.3d 344, 349 (Tenn. Ct. App. 2009) (quoting *Patel v. Bayliff*, 121 S.W.3d 347, 353 (Tenn. Ct. App. 2003)). In addition, a plaintiff's damages must have been caused by his reasonable reliance on the nondisclosure, i.e., the plaintiff was not aware of the material fact and would have acted differently if the plaintiff knew of the concealed or suppressed fact. *Id.* at 350.

In this case, plaintiff argues that defendant's false statements of her fidelity in 2008, which were not disclosed until 2010, were intentionally made so that plaintiff would continue with the parties' 2008 marriage and remained concealed during the parties' marriage and separation, the period in which the terms of the MDA were formulated. Defendant knowingly concealed and otherwise failed to disclose her infidelity during this time period, plaintiff argues, in order to gain a favorable settlement

9

for herself under the MDA. Plaintiff further argues that had he learned of her sexual relationship with her former boyfriend prior to the execution of the MDA, he would have filed for a contested divorce, so that defendant's statements about her fidelity were material to the terms of the MDA and his assent to them. This is in addition to plaintiff's statement that he would not have married defendant had she disclosed to the plaintiff her sexual relationship with her former boyfriend prior to their wedding. Moreover, plaintiff contends that he informed defendant that he would not have gone through with the wedding or the uncontested divorce had he known about her infidelity, and his reliance upon her statements of fidelity forced him to pay the large sums set forth in the MDA.

While defendant disputes the veracity of plaintiff's arguments, she has not presented any evidence showing "that there is no genuine dispute as to any material fact" or that she "is entitled to judgment as a matter of law," which is her burden under Rule 56. Fed. R. Civ. P. 56(a). Defendant argues that she had no intent to induce plaintiff to enter into the MDA by failing to disclose her infidelity, but the Court finds that this claim is at issue, particularly in light of the fact that defendant did not disclose her infidelity until six months after the divorce judgment was entered. The Court similarly finds that defendant's arguments related to plaintiff's reliance upon defendant's statements in agreeing to the MDA involve factual questions to be decided by a jury at trial rather by the Court on a motion for summary judgment. Accordingly, on the record before it and upon review of the case law, the Court concludes that defendant is not entitled to

10

summary judgment on the ground that there is no genuine issue of material fact as to plaintiff's fraud claim.

### 3. *Res Judicata*, Waiver, and Release

Beyond her substantive arguments, defendant argues that plaintiff's fraud claim is barred by the principles of *res judicata*. Defendant's arguments in this respect are twofold: (1) that the divorce judgment [Doc. 24-2], which incorporated the terms of the MDA, represents a binding judgment that "conclusively" deals with the issues in plaintiff's complaint; and (2) that plaintiff's counter-petition in chancery court, which was based on the same occurrences alleged in the present action, was already dismissed by the chancery court [Doc. 24-4]. Similarly, defendant argues that defendant is entitled to summary judgment on the basis of waiver and/or release, given that the MDA contains a release clause and plaintiff freely agreed to it. Plaintiff responds that defendant has waived any ability to assert *res judicata* or waiver because both are affirmative defenses that must be pled in an answer [Doc. 28 at 22 (citing Fed. R. Civ. P. 8(c))]. Defendant has since filed a Motion for Leave to Amend Answer [Doc. 39], to which plaintiff responded in opposition [Doc. 43], prompting a reply from defendant [Doc. 50]. The Court finds it appropriate to take up this motion prior to determining the merits of defendant's late-asserted affirmative defenses.

Rule 15(a) instructs that courts should "freely give leave [to amend] when justice so requires. Fed. R. Civ. P. 15(a). However, when a deadline established by a court's scheduling order has passed, the party seeking to file beyond the deadline must show

11

good cause under Rule 16(b) for failure to file before the deadline. *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). With respect to the amendment of pleadings, where a deadline established by a court's case management order has passed, "a [party] first must show good cause under Rule 16(b) [of the Federal Rules of Civil Procedure] for failure earlier to seek leave to amend" and the court "must evaluate prejudice to the nonmoving party 'before a court will [even] consider whether amendment is proper under Rule 15(a).'" *Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 376 (6th Cir. 2009) (quoting *Leary*, 349 F.3d at 909).

"The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (citations omitted). The test for diligence is not how quickly counsel moves to amend after becoming aware of the information warranting the amendment. *Stanich v. Hissong Grp., Inc.*, No. 2:09-cv-143, 2011 WL 1560650, at *4 (S.D. Ohio Apr. 25, 2011). The test, rather, is whether the movant could have discovered the information underlying the sought-after amendment prior to the deadline set forth in the scheduling order. *Id.*; *see also Perea v. Hunter Douglas Window Fashions, Inc.*, No. 06-cv-01374-MSK-MJW, 2008 WL 511409, at *3 (D. Colo. Feb. 22, 2008). The Sixth Circuit has noted that when an amendment is sought at a late stage of litigation "there is an increased burden to show justification for failing to move earlier." *Bridgeport Music, Inc. v. Dimension Films*, 401 F.3d 647, 662 (6th Cir. 2004) (citation omitted).

12

In this case, the Scheduling Order provides that "[a]t least one hundred and twenty (120) days before trial all motions for leave to amend the pleadings and add parties must be filed" [Doc. 4 ¶ 6]. Because the deadline to amend the pleadings had expired by the time defendant's motion to amend was filed, defendant must show good cause for failing to seek leave to amend earlier. *See Leary*, 349 F.3d at 909. In her memorandum in support of her motion to amend, defendant notes that the asserted affirmative defenses "were overlooked" at the time of the filing of the Answer [Doc. 39], but does not otherwise provide the Court with any justification for why her motion to amend was not brought earlier. The grounds upon which defendant bases her claims of *res judicata* and waiver were present when plaintiff filed his complaint, so that defendant could have raised those defenses in her initial responsive pleading. Plaintiff also was aware that she would be relying on *res judicata* and waiver at the time she filed her timely motion for summary judgment, but she did not file a motion to amend at that time. Instead, defendant filed her motion forty-one days before trial, long after the deadline for amendments had passed and after plaintiff noted in his opposition to the motion for summary judgment that she failed to raise the affirmation defenses in her answer. Without any evidence of why defendant's motion was untimely, the Court cannot conclude that defendant was diligent in attempting to meet the Scheduling Order's requirements and thus cannot find good cause exists to permit the amendment under Rule 16. Accordingly, plaintiff's motion to amend [Doc. 39] will be denied and the Court will

13

not consider the substance of plaintiff's affirmative defenses presented in the motion for summary judgment.[3]

### B.     Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for summary judgment as to his fraud claim against defendant, arguing that defendant had a duty to disclose her infidelity prior to their marriage and that her failure to do so induced him to enter into the generous terms of the MDA.  Defendant moves to strike or "dismiss" plaintiff's motion as untimely [Doc. 41].

As previously discussed, Rule 16 of the Federal Rules of Civil Procedure governs the issuance of scheduling orders, noting that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).   "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements."  *Inge*, 281 F.3d at 625.

The Scheduling Order in this matter states that summary judgment motions are to "be filed as soon as possible, but no later than one hundred twenty (120) days before trial. The failure to timely file such motions will be grounds to summarily deny them" [Doc. 4 at 6].  Plaintiff's motion for summary judgment [Doc. 36] was filed on June 27, 2013.  As trial was set for August 19, 2013, plaintiff's motion was filed approximately sixty-eight days beyond the deadline set forth in the Scheduling Order [Doc. 4], and fifty-four days

---

[3] The Court notes, however, that even if it were to consider defendant's arguments on the merits, summary judgment would not be proper on the basis of *res judicata* or waiver, given that the divorce judgment was entered prior to plaintiff becoming aware of the alleged fraud in this case, and given the fact that the chancery court did not dismiss plaintiff's counter-complaint on the merits [*See* Doc. 28-1].

14

before trial. Plaintiff did not file a timely motion for extension within the requisite time period, and in the motion itself, plaintiff does not set forth any reasons for delay under which the Court could find "good cause" existed to extend the deadlines for filing dispositive motions. Although plaintiff raises such arguments in response to defendant's motion to dismiss [Doc. 44], the Court concludes that plaintiff has not shown good cause exists for permitting his late filed motion for summary, or that plaintiff otherwise exercised due diligence in attempting to meet the Scheduling Order's requirements. Accordingly, plaintiff's motion for summary judgment [Doc. 27] will be denied.[4]

## IV.    Conclusion

For the reasons stated herein, defendant's Motion for Summary Judgment [Doc. 24] is **DENIED**, plaintiff's Motion for Summary Judgment [Doc. 36] is **DENIED**. In addition, the Motion for Leave to Amend Answer [Doc 39] is **DENIED**, the Request for Oral Argument [Doc 40] is **DENIED AS MOOT**, the Motion to Dismiss Plaintiff's Motion for Partial Summary Judgment [Doc. 41] is **GRANTED**, and the Motion for Additional Time [Doc. 49] is **DENIED AS MOOT**. This matter will proceed to trial on **August 19, 2013, at 9:00 a.m.**

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] For these reasons, defendant's motion to dismiss [Doc. 41] will be granted to the extent that the Court will not consider plaintiff's summary judgment motion on the merits. Additionally, plaintiff's Request for Oral Argument [Doc. 40] and Motion for Additional Time [Doc. 49] will be denied as moot.

15